UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MIDIALA JUANA MEDINA MARTINEZ**,<br><br>Plaintiff,<br><br>v.<br><br>**BENJAMIN G. ZIFF**, *et al.*,<br><br>Defendants. | Case No. 1:23-cv-2862 (TNM) |

## MEMORANDUM OPINION

Midiala Juana Medina Martinez is a Cuban citizen who wants to join her son in the United States. Her son is a U.S. citizen, and he launched Martinez's immigration application by filing a Form I-130 Petition on her behalf. Things began smoothly enough. The U.S. Citizenship and Immigration Services approved Martinez's petition and she sat for an interview with a consular officer at the U.S. Embassy in Cuba. But in May 2023, the Embassy "refused" Martinez's application and placed it in "administrative processing." Compl. ¶¶ 18–20, ECF No. 1. Since then, the U.S. Department of State has not given Martinez any updates on the status of her application.

So Martinez sued two State officials to hurry things along. State then moved to dismiss. It argues that Martinez lacks standing to sue one Defendant. And it says her claims against the other Defendant fail because (1) State has already discharged its duty to issue or refuse the visa; (2) the consular nonreviewability doctrine shields a visa refusal from judicial inspection; and (3) assuming the visa had not been refused, any delay in adjudication is not unreasonable. State's arguments are largely correct. So the Court will grant its Motion and dismiss the Complaint.

I.

Martinez is a Cuban citizen who wants to join her son, Roberto Fernandez Medina, in the United States. Compl. ¶¶ 1, 10. Martinez's "goal" is "to obtain lawful permanent resident status" in this country. *Id.* ¶ 17. Because Medina is a U.S. citizen, he sponsored his mother's immigrant visa application. *Id.* ¶ 16. He did so by filing a Form I-130 (Petition for Alien Relative) with the U.S. Citizenship and Immigration Services in December 2021. *Id.* The agency approved the petition, which allowed Martinez to move to the next step in the application process: an interview with a consular officer at the U.S. Embassy in Cuba. *Id.* ¶ 18. That interview happened in May 2023. *Id.* And during the interview, Martinez "responded truthfully to all questions and provided all requested information." *Id.*

Then Martinez's application hit a snag. State told her that her visa has been refused and "placed in administrative processing." *Id.* ¶¶ 19–20; *see also Visa Status Check*, U.S. Dep't of State, https://ceac.state.gov/CEACStatTracker/Status.aspx (last visited June 17, 2024) (confirming "Immigrant Visa Case Number: HAV2023522001" has been "Refused").[1] She was further told that her visa application had been refused "under INA § 221(g)." Compl. ¶ 20. Since the refusal, Martinez has tried to get status updates on her application. *Id.* ¶ 21. Yet she has "received no meaningful responses." *Id.*

Martinez claims she suffers "from significant emotional, personal and financial hardship" because of the delayed visa. *Id.* ¶ 6. She alleges the separation from her son aggravates her diabetes, which leads to "dangerous spikes in her blood sugar levels." *Id.* ¶ 7. She attends

---

[1] The Court may take judicial notice of the contents of a government website, *Cannon v. District of Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013), and it may consider such contents at the motion to dismiss stage without converting the motion into one for summary judgment, *Ndondji v. InterPark Inc.*, 768 F. Supp. 2d 263, 272 (D.D.C. 2011).

therapy to cope with delay-related "anxiety and depression." *Id.* And she quit her job last May "intending to start her life in the United States." *Id.* ¶ 9. But since the visa never came through, Martinez has been strapped for cash and reliant on her son for financial help. *Id.*

Four months after the refusal, Martinez filed this lawsuit. *See* Compl. ¶¶ 18–19. She sued two State officials: Antony Blinken (the Secretary of State) and Benjamin Ziff (the Chargé d'Affaires at the U.S. Embassy in Cuba). And she brings two claims against them: an Administrative Procedure Act (APA) claim and a mandamus claim under 28 U.S.C. § 1361. Both claims seek the "complete adjudication of [Martinez's] visa application." Compl. ¶ 21.

State moved to dismiss the Complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. *See* Defs.' Mot. Dismiss, ECF No. 9. That motion is now ripe.

## II.

Start with State's jurisdictional challenge. To survive a motion to dismiss under Rule 12(b)(1), the Complaint's allegations must establish a plausible basis for the Court's jurisdiction. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). And jurisdiction, of course, encompasses standing to sue under Article III. *See Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). Under Rule 12(b)(1), the Court "assume[s] the truth of all material factual allegations in the complaint and construe[s] the complaint liberally, granting [Martinez] the benefit of all inferences that can be derived from the facts alleged." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (cleaned up).

State challenges jurisdiction on standing grounds. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89, 94–95 (1998). Standing doctrine flows from Article III's "case or controversy requirement," which "limits the role of the Federal Judiciary in our system of separated powers." *Food & Drug Admin. v. All. for Hippocratic Med.*, --- S. Ct. ----, 2024 WL

2964140, *5 (2024). The doctrine "ensure[s] that in each case, the proper plaintiff is suing the proper defendant over a kind of injury the Court is able to resolve." *Mass. Coal. for Immigr. Ref. v. U.S. Dep't of Homeland Sec.*, --- F. Supp. 3d ----, 2023 WL 6388815, at *5 (D.D.C. 2023). In practice, Martinez must allege "(1) an 'injury in fact' that is 'concrete and particularized' as well as 'actual or imminent'; (2) a 'causal connection' between the injury and the challenged conduct; and (3) a likelihood, as opposed to mere speculation, 'that the injury will be redressed by a favorable decision.'" *Ark Initiative v. Tidwell*, 749 F.3d 1071, 1075 (D.C. Cir. 2014) (quoting *Lujan*, 504 U.S. at 560–61).

State argues that Martinez generally lacks standing to sue either Defendant because she has not alleged an injury-in-fact redressable by a favorable decision.[2] *See* Defs.' Reply at 2–5, ECF No. 12. It also argues that Martinez lacks standing to sue Secretary Blinken because he has no authority over the visa adjudication process. *See* Defs.' Mot. at 12–13. The Court addresses each of these arguments in turn.

*First*, Martinez has Article III standing as a general matter. Her allegations of physical and monetary harms, *see* Compl. ¶¶ 6–9, "readily qualify as concrete injuries under Article III." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). And because these harms stem from the uncertainty caused by State's alleged delay, the Court could remedy that uncertainty—and its attendant harms—with an order compelling adjudication. *See Yaghoubnezhad v. Stufft*, --- F. Supp. 3d ----, 2024 WL 2077551, at *5 (D.D.C. 2024) (holding that delay-related "injuries

---

[2] State makes this argument for the first time in its Reply. Though late-raised arguments are generally waived, *see Nippon Shinyaku Co., Ltd. v. Iancu*, 369 F. Supp. 3d 226, 239 n.8 (D.D.C. 2019), the Court "has an independent obligation to assure that standing exists," *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009). So the Court proceeds to analyze this argument.

plausibly may be redressed with an order to complete [a visa application] review more expeditiously").

*Second*, Martinez lacks standing to sue Secretary Blinken because her alleged injuries are neither traceable to the Secretary nor remediable by an order directed at him.  *See* Defs.' Mot. at 12–13; Defs.' Reply at 2 (noting Martinez failed to address this issue).  Congress carefully circumscribed "[t]he Secretary's role in granting and refusing visas." *Yaghoubnezhad*, 2024 WL 2077551, at *5.  It gave the Secretary broad "administration and . . . enforcement" authority relating to "the powers, duties and functions of diplomatic and consular officers of the United States, *except* those powers, duties and functions conferred upon the consular officers *relating to the granting or refusal of visas*."  8 U.S.C. § 1104(a) (emphasis added).

Under the plain meaning of this statute, consular officers have "exclusive authority" over visa adjudications.  *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021).  And the Secretary is "expressly precluded" from exercising any authority in these matters.  *See Yaghoubnezhad*, 2024 WL 2077551, at *5.  Because Congress carved the Secretary entirely out of the visa adjudication process, Martinez lacks standing to sue him.  *Accord Sedaghatdoust v. Blinken*, No. 1:23-cv-03218 (TNM), 2024 WL 2383228, at *2 (D.D.C. May 23, 2024).

But that still leaves another Defendant—Benjamin Ziff, the Chargé d'Affaires of the U.S. Embassy in Cuba.  State makes no standing argument about him.  And for good reason.  "The Chargé d'Affaires appears to be a 'commissioned consular officer'" with authority over visa adjudications.  *Id.* (quoting 22 C.F.R. § 40.1(d) (defining consular officer)); *see also* 8 U.S.C. § 1104(a) (vesting consular officers with visa adjudication authority).  So the Court proceeds to analyze the merits of Martinez's claims related to Defendant Ziff.

### III.

Now consider State's merits arguments. To fend off a Rule 12(b)(6) challenge, the Complaint must plausibly "state a claim upon which relief can be granted." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 552 (2007). This requires the Complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). Martinez's claims fail for three reasons.[3]

*First*, State does not have a discrete, nondiscretionary duty to take any further action on Martinez's refused visa application. The presence of some duty is essential to any claim for undue delay. *See Sedaghatdoust*, 2024 WL 2383228, at *3. After all, an agency has no duty to act *quickly* if it has no duty to *act*. *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63–64 (2004) ("[T]he only agency action that can be compelled under the APA is action legally *required*.").

That principle brings an end to this case. State has already discharged the only nondiscretionary duty it owes Martinez—to either "issue the visa" or "refuse the visa under INA § 212(a) or 221(g)." 22 C.F.R. § 42.81(a); *see also* 8 U.S.C. § 1202(b) ("All immigrant visa applications shall be reviewed and adjudicated by a consular officer."). After review by a consular officer, State refused Martinez's visa under INA § 221(g)—a fact pled in the Complaint (at ¶¶ 19–20) and confirmed by State's website, *see Visa Status Check*, U.S. Dep't of State, https://ceac.state.gov/CEACStatTracker/Status.aspx (last visited June 17, 2024).

Martinez says the APA demands more of State. She points to 5 U.S.C. § 555(b), which says an agency must "conclude a matter presented to it" "within a reasonable time." Pl.'s Opp'n

---

[3] The Court addresses Martinez's APA and mandamus claims together because the legal standards in this context are "identical." *Kangarloo v. Pompeo*, 480 F. Supp. 3d 134, 142 (D.D.C. 2020).

at 9, ECF No. 11. But State has already reached a conclusion on Martinez's visa application—it refused it. Martinez cannot rely on the "general directive" in § 555(b) "to impose a duty that has no basis in the INA or its implementing regulations." *Yaghoubnezhad*, 2024 WL 2077551, at *9. In other words, State has "fully performed the only duties" it owes Martinez. *Sedaghatdoust*, 2024 WL 2383228, at *3. And no statute or regulation "create[s] an additional duty to engage in post-refusal reconsideration of the visa application." *Id.*

*Second*, the doctrine of consular nonreviewability forbids the Court from tinkering with State's refusal decision. *See Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999) ("The doctrine holds that a consular official's decision to issue or withhold a visa is not subject to judicial review, at least unless Congress says otherwise."). This doctrine extends to State's "decision to place [Martinez's] visa application into post-refusal administrative processing." *Sedaghatdoust*, 2024 WL 2383228, at *3 (cleaned up).

State may have valid reasons for giving certain visa applications a second look. But no statute or regulation *requires* State "to engage in discretionary re-adjudication" of all visa applications. *Yaghoubnezhad*, 2024 WL 2077551, at *11. Quite the opposite: Once State has rendered "a decision, the Court must 'steer clear of the substance of the decision.'" *Id.* (quoting *Al-Gharawy v. DHS*, 617 F. Supp. 3d 1, 13 (D.D.C. 2022)). And here "that means refraining from ordering additional processing of an already refused visa application." *Id.*

*Third*, assuming State has not already adjudicated Martinez's visa, the four-month delay between State's refusal and Martinez's suit is patently reasonable. Six factors—commonly known as the "*TRAC* factors"—bear on the reasonableness of an agency's delay:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in

7

>   the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the Court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the Court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the Court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999) (quoting *Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984)) (cleaned up).  The balance of these factors show that State's alleged four-month delay is reasonable.

The first two factors "strongly favor" State because "Congress has not supplied a rule of reason" or "statutory deadline" for processing immigrant visa applications.  *Yaghoubnezhad*, 2024 WL 2077551, at *12.  And the first factor alone is the most important and often dispositive consideration.  *See L'Association des Americains Accidentels v. U.S. Dep't of State*, 633 F. Supp. 3d 74, 82 (D.D.C. 2022), *appeal dismissed*, No. 22-5262, 2023 WL 5321008 (D.C. Cir. Aug. 18, 2023) (per curiam).

The fourth factor "strongly disfavors" Martinez because granting her application would condone judicial "line jumping" that puts her application "ahead of longer-pending petitions." *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 343 (D.C. Cir. 2023).  Martinez has not alleged that State engaged in impropriety that contributed to the delay, so the sixth factor is neutral.  *Accord Dastagir v. Blinken*, 557 F. Supp. 3d 160, 168 (D.D.C. 2021).

Finally, the third or fifth factors do not favor Martinez.  Delay-related financial and emotional harms are simply "insufficient to tip *TRAC* factors three and five in [her] favor." *Da Costa*, 80 F.4th at 344 (insufficient harm where plaintiffs "faced prolonged periods of riots, flooding, and inconsistent access to government-provided electricity and water" (cleaned up)).  This is especially true considering Martinez and her son may be able to reconnect in Cuba, as they used to do "three times a year."  Compl. ¶ 7; *cf. Palakuru v. Renaud*, 521 F. Supp. 3d 46, 53

(D.D.C. 2021) (insufficient harm where plaintiff "and the lives of his family members are on hold"). And even if factors three and five favored Martinez, they would not "tip the scales" when weighed against the other four. *Da Costa*, 80 F.4th at 344; *Mukkavilli v. Jaddou*, No. 23-5138, 2024 WL 1231346, at *2 (D.C. Cir. Mar. 22, 2024) (unpublished). So Martinez loses on the *TRAC* factors.

One last observation: Courts evaluating undue delay claims have sanctioned far longer delays than the four-month delay presented here. *See Yaghoubnezhad*, 2024 WL 2077551, at *11 (collecting cases).

### IV.

The State Department has validly and officially refused Martinez's visa application. While that determination is undoubtedly disappointing, it is conclusive "and cannot be disturbed by judicial decree." *Sedaghatdoust*, 2024 WL 2383228, at *4. So the Court will grant State's Motion to Dismiss. A corresponding Order will issue today.

Dated: June 18, 2024                                        TREVOR N. McFADDEN, U.S.D.J.